The plaintiffs, Lamar and Ann Havens,[1] appeal from a summary judgment entered in favor of the defendants, Bill Trawick, Hamp Griffin Volvo-Subaru, and others. The Havenses alleged fraud and breach of contract. Because we find that the trial court improperly entered a summary judgment for the defendants, we reverse and remand for further proceedings.
 Facts
The Havenses claim that they were defrauded by the defendants because, they say, the defendants failed to live up to an offer made in a sales advertisement. This advertisement consisted of a flier announcing a special sale of new Volvo automobiles that were within the inventory of Griffin Volvo-Subaru on certain dates and times: sale times were from 5:00 p.m. until 9:00 p.m. on Friday, January 29, 1988; from 9:00 a.m. until 9:00 p.m. on Saturday, January 30, 1988; and from 11:00 a.m. to 5:00 p.m. on Sunday, January 31, 1988. The flier also included the following language:
 "Save! Save! We're making the best deals ever on every new Volvo in our inventory and to make your deal even better we've enclosed a draft in the amount of $1,000 that you can apply to your purchase of a new Volvo after you've made your best deal!!" (Emphasis added.)
Ann Havens alleges that she went to Griffin Volvo-Subaru on the evening of January 29, 1988, and began discussing the possible purchase of a new Volvo with Billy *Page 918 
Trawick, a Griffin salesman. The "New Vehicle Retail Buyer's Order" that the parties partially completed shows that Mrs. Havens and Trawick were discussing the possible sale of a 1988 Volvo, Model 240DL, four-door automobile, with black exterior, charcoal-colored interior, and nonmetallic paint. Neither Mrs. Havens nor Trawick or any other official of Griffin Volvo-Subaru executed the buyer's order form.
Mrs. Havens and Trawick entered into a discussion of the price to be paid for a Volvo 240DL. She says that Trawick told her that the lowest price for which he could sell a 240DL was $11,792.12. She alleges that when Trawick told her that the lowest price for which he could sell her a 240DL was $11,792.12, including her trade in, she felt that she had made her "best deal." This dispute arose, Mrs. Havens said, when she determined that she had made her best deal and then tendered the $1,000 draft and demanded that the price be reduced by the amount of the draft, and the draft was refused by Trawick. Mrs. Havens stated in her deposition that Trawick became "white as a ghost" when she produced the draft and that he immediately went to talk to his sales manager. Mrs. Havens said Trawick told her that the draft applied only to certain models and not to the 240DL's.
It appears that at the end of Friday night's negotiations Trawick gave Mrs. Havens his card with the price "$11,792.12" written on the back. She says that he again told her that this was the "rock bottom" price for which he could sell her a 240DL. She also says that Trawick told her to talk about the deal with her husband and that the $1,000 draft could not be deducted from the sale price. She says that he told her to come back Saturday and that they would then "finalize" the sale.
Ann Havens was given a blue Volvo 240DL to drive home from the dealership on Friday night. However, there is evidence that Havens did not want this vehicle. Moreover, it appears that this vehicle was loaned to her because her "trade in" would have exceeded 50,000 miles on the trip back to her home and thereby would have substantially decreased in value.
The record is unclear regarding what, if anything, occurred on the following Saturday and Havens did not contact any Griffin representative on Sunday, January 31. The following day, and for the next several days, Ann Havens made numerous telephone calls to the dealership in an attempt to talk with Hamp Griffin, the owner of the dealership. She alleges that each time she called she was referred to a Mr. Hardman, who, she says, "pretended like he didn't know" her. She stated at one point in her deposition that Hamp Griffin told her that he could not deduct the $1000 from the price of the automobile because if he did he would lose money. She contends that Griffin told her that he had sold 30 Volvos over the weekend and that he had "plenty of customers."
The Havenses claim that Ann negotiated a "best deal" with Trawick pursuant to the terms of the flier that the Havenses had received in the mail. Ann's deposition testimony indicates that she negotiated a final sale price, including a trade-in allowance of over $6,000 for her 1984 Oldsmobile. Ann alleges that the final price stated of $11,792.12 was represented by Trawick to be the "rock bottom" price for which Griffin Volvo-Subaru would sell her a car. We find persuasive the following exchange that took place during Ann Havens's deposition:
 "A We were just trying to come to a price on a 240 DL, equipped like I wanted. And then he made the comment, we will worry about the color later.
 "Q Listen carefully to my question. I'm going to ask you this question when this case comes to trial, and I'm going to read your answer back to you: Was the vehicle that you were trying to buy a specific identifiable vehicle on Hamp Griffin's lot?
"A I don't know how to answer that.
 "Mr. Terranova: It requires a yes or no. I think you answered it fine before.
 "Mr. Kilborn: Is that your answer, that you don't know how to answer it? *Page 919 
 "A I was just trying to get the price worked out. And then later we would worry about whether I went out there and got the blue or the green one. That's what it amounted to.
". . . .
 "Q I said isn't it true that you did not identify any specific vehicle that you made a best offer on, Mrs. Havens?
 "A The 240DL's. I just hadn't said for sure which color I would drive away in.
"Q And that included several vehicles, didn't it?
 "A Yes. There were several 240DL's sitting out there.
 "Q And you are telling me that you made your best deal on several 240DL's?
 "A Well, the 240DL equipped like I wanted. It was just going to be a matter of which color I grabbed."
During this deposition, Ann Havens was asked if she was aware that the vehicle for which the "best deal" was to be struck must be in the inventory of Griffin Volvo-Subaru before Griffin would be bound to honor the $1,000 draft. Ann stated that she was aware of that requirement. She argued that she had decided that she wanted a 240DL, and that there were several in stock, but that she simply had not decided which color she wanted. Ann also states that she assumed that the draft would be good for any 240DL in inventory with the options she wanted: a trim package, protection package, retractable antenna, and AM/FM radio-cassette player. Ann argues that she would have taken a 240DL that Griffin had on the lot if a price could be agreed upon. She alleges that she had made her "best deal" at the point when Trawick informed her that $11,792 was the "rock bottom" price for which Griffin could sell her a 240DL that was equipped like she wanted.
 Discussion
The central question to be answered in this appeal is whether the plaintiff has produced any evidence that she in fact had made her "best deal," as she was invited to do by Griffin Volvo-Subaru. If she had not made a "best deal," summary judgment would be proper. Summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.
In reviewing a summary judgment, this Court will take into account the same factors considered by the trial court in initially ruling on the motion for summary judgment. Ex parteBagby Elevator Elec. Co., 383 So.2d 173 (Ala. 1980). If the reviewing court is left with a reasonable doubt as to the existence of a genuine issue of material fact, that doubt must be resolved against the moving party, in this case the defendants. Bogle v. Scheer, 512 So.2d 1336 (Ala. 1987). However, speculative evidence will not suffice to create a genuine issue of fact for trial. Richardson v. Kroger Co.,521 So.2d 934 (Ala. 1988). The trial court must avoid weighing issues of fact and must decide only whether there are genuine issues of material fact for a jury. Grimes v. Massey Ferguson,Inc., 355 So.2d 338 (Ala. 1978); James v. State Farm Fire Casualty Co., 405 So.2d 712 (Ala.Civ.App. 1981). Because the Havenses allege fraud on the part of Griffin Volvo-Subaru, they must necessarily produce evidence that the defendant made a false representation of material fact. P S Business, Inc. v.South Central Bell Telephone Co., 466 So.2d 928 (Ala. 1985).
The complaint in this cause was filed in the trial court on May 9, 1988; therefore, the "substantial evidence" rule applies to the ruling on the motion for summary judgment. Code 1975, § 12-21-12. The question here is whether the Havenses produced substantial evidence tending to prove that they in fact had made a "best deal" on a car in Griffin Volvo-Subaru's inventory.
Based upon our review of the materials in the record before us, including the deposition of Ann Havens and the buyer's order form, we conclude that a jury question is presented regarding whether Ann Havens had made her best deal, as invited by Griffin Volvo-Subaru. The materials before us indicate that Ann Havens entered into negotiations with representatives of Griffin *Page 920 
Volvo-Subaru to purchase a 240DL. The buyer's order form discloses that the sale contemplated a purchase of a black Volvo with charcoal-colored interior; Griffin contends that there was no black Volvo in inventory at the time of these negotiations. Moreover, the buyer's order form was not executed by either Ann Havens or any representative of Griffin Volvo-Subaru.
Ann Havens says that she did not care about the color of the car on which she claims to have concluded an agreement to purchase. In her deposition she alleges that she would have taken any 240DL that Griffin had in inventory "as long as she could use her check." Ann Havens stated that she and Trawick discussed the purchase of a 240DL. It is undisputed that there were several automobiles of that model in the inventory of Griffin Volvo-Subaru at that time. She also alleged that Trawick quoted her a "rock bottom" price for a 240DL, but then refused to deduct the draft from the stated price. Moreover, she alleged that Hamp Griffin stated in a telephone conversation that he could not sell her a 240DL for the price stated less the draft because if he did so he would lose money on the deal. Havens also stated that she had incurred certain expenses in pursuing the proposed purchase from Griffin Volvo-Subaru.
Fraud in the legal sense is committed when a misrepresentation of material fact, one that would induce the injured party to take action, is made. Reeves v. Porter,521 So.2d 963, 967 (Ala. 1988); Speigner v. Howard, 502 So.2d 367
(Ala. 1987). See, also, Code 1975, § 6-5-101. The representations contained in the Griffin Volvo-Subaru advertisement were material, and we believe that the Havenses produced sufficient evidence, i.e., such evidence that reasonable minds, exercising impartial judgment, could conclude that the defendants had committed a fraud. Home Bank ofGuntersville v. Perpetual Savings Loan Ass'n, 547 So.2d 840
(Ala. 1989). See, also, Code 1975, § 12-21-12 et seq.
Based upon the foregoing, we conclude that the summary judgment was not proper. Therefore, that judgment is reversed and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
MADDOX, ALMON, ADAMS and STEAGALL, JJ., concur.
[1] Mr. Havens was a party to this suit pursuant to the complaint filed by the Havenses. However, the record does not disclose how he was involved in the transactions that gave rise to this dispute.